

# In the
# Missouri Court of Appeals
## Western District

CITY OF HARRISONVILLE, ET AL.,

   Appellants,

v.

MISSOURI DEPT. OF NATURAL
RESOURCES AND BOARD OF
TRUSTEES FOR THE PETROLEUM
STORAGE TANK INSURANCE
FUND,

   Respondents.

WD85091
OPINION FILED:
FEBRUARY 21, 2023

---

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel R. Green, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge, W. Douglas Thomson,
Judge, Janet Sutton, Judge**

City of Harrisonville and Brad Ratliff (the "City" collectively) appeal the circuit

court's grant of summary judgment in favor of the Missouri Department of Natural

Resources (the "Department") and the Board of Trustees for the Petroleum Storage Tank

Insurance Fund (the "Fund Board")[1] on the City's "Petition for Damages" which alleged

---

[1] The Department and the Fund will collectively be referenced as "Respondents".

that the Department knowingly and purposefully violated Missouri's Sunshine Law[2] by delaying responses and hiding records sought in the City's Sunshine Law requests, and knowingly and purposefully violated the Missouri Sunshine Law by withholding public records under inapplicable exceptions to the law. On appeal, the City contends the circuit court 1) erred in granting summary judgment to Respondents because the record sought by the city (the "Walters Letter") is not a closeable record under Section 610.021(3),[3] in that it does not contain personal information related to the hiring, firing, disciplining, or promoting of an employee; 2) erred in granting summary judgment to Respondents because the Walters Letter is not a closeable record under Section 610.021(13), in that it does not relate to individually identifiable personnel records, performance ratings, or records of Carol Eighmey; 3) erred in granting summary judgment to Respondents because the Walters Letter is not a closed record under Section 610.021(3) or (13), in that disclosure of the record does not infringe on Eighmey's privacy rights; 4) erred in granting summary judgment to Respondents because a genuine issue of material fact remains disputed, in that the City offered a statement by the Walters Letter's author which contradicted Respondents' affidavits regarding the record's content and ability to

---

[2] The body of Missouri statutes which govern whether meetings, records, votes, actions, and deliberations of public governmental bodies are open to the public, Sections 610.010 et seq., RSMo, are often referenced as the "Sunshine Law." *See Laut v. City of Arnold*, 491 S.W.3d 191, 193 (Mo. banc 2016).

[3] Statutory references are to the Revised Statutes of Missouri, as updated through August 2020, unless otherwise noted.

be closed; 5) erred in denying summary judgment to the City because Respondents knowingly violated Missouri's Sunshine Law, in that the Department asserted baseless exceptions of Section 610.021 that it knew did not apply to the Walters Letter; 6) erred in denying summary judgment to the City because Respondents knowingly violated Missouri's Sunshine Law, in that Respondents withheld the Walters Letter in its entirety without producing a redacted version; and, 7) erred in denying summary judgment to the City because Respondents purposefully violated Missouri's Sunshine Law, in that Respondents had a conscious plan to deny access to the Walters Letter. We affirm.

## Background and Factual Information

The Department is an agency of the State of Missouri, created under Section 640.010 to administer programs relating to environmental control and conservation and to manage the natural resources of Missouri. A director is in charge of the Department and administers "the programs assigned to the department relating to environmental control and the conservation and management of natural resources." *Id.* The Department's director also "coordinate[s] and supervise[s] all staff and other personnel assigned to the department." *Id.* The Department's director "recommend[s] policies to the various boards and commissions assigned to the department to achieve effective and coordinated environmental control and natural resource conservation policies."

The Department regulates and sets standards for underground petroleum storage tanks. §319.100 to §319.139. The "Petroleum Storage Tank Insurance Fund" (the "Fund") is a special trust fund within the State treasury. §319.129.1. The Fund

3

reimburses allowable costs for cleaning up petroleum contamination from certain petroleum storage tanks that were taken out of use before December 31, 1991. §319.131.9 and .10. Additionally, for owners and operators of petroleum storage tanks that are actively in use, the Fund is used to indemnify certain allowable first-party and third-party claims arising from accidental petroleum releases, as well as providing the defense of eligible third-party claims. §319.131.1, .4-.6.

The general administration of the Fund and the responsibility for the proper operation of the Fund, including all decisions relating to payments from the Fund, are vested in a board of trustees, i.e. the Fund Board. §319.129.4. The director of the Department, or a designee of the director, is a statutorily required member of the Fund Board. *Id.* The Fund Board is a type III agency within the State of Missouri, and the Fund Board is statutorily required to appoint an executive director, and other employees as necessary, for the Fund. §319.129.8. The executive director is in charge of "the offices, operations, records, and other employees of the board, subject to the direction of the board." *Id.* Staff resources for the Fund may be provided by the Department, with the Fund compensating the Department for all costs of providing staff. §319.129.9.

Carol Eighmey was the executive director of the Fund prior to her retirement in 2020. Williams and Company Consulting, Inc. ("Williams & Co.") contracts with the Fund Board to provide the Fund Board with Fund administration services. David Walters is a former employee of Williams and Co. In 2018, Walters sent a letter (the "Walters Letter") to the Department director, Carol Comer, and copied the letter to the Fund

4

Board's chairperson. The parties agree that the Walters Letter concerned Eighmey's conduct while she served as executive director of the Fund.

On July 16, 2020, the City (through counsel) sent a Sunshine Law request to the Department seeking the Walters Letter; the request also sought any correspondence regarding the Walters Letter. On August 21, 2020, the City made a second Sunshine Law request which sought correspondence between the Department and other public entities, such as the Missouri Attorney General's Office and the Fund Board, which regarded the first request.

The Department acknowledged receipt of the requests on the same days the requests were sent by the City, and later provided more specific time frames as to when the Department's responses could be expected. On September 28, 2020, the Department responded to both requests. With regard to the July 16, 2020 request, the Department stated:

> Please find attached to the e-mail this letter came in the records responsive to your firm's request dated July 16, 2020. Other records found that were responsive to your requests have been closed pursuant to Section 610.021(1), (3), (13), and potentially (14), RSMo. They are personnel and personal information related and carry legal work product and privilege protections.

A privilege and closed record log immediately followed. In response to the August 21, 2020 request, the Department stated:

> With respect to your August 21, 2020, Sunshine Law request, the documents sought are privileged, legal work product, and involve communications related to pending or anticipated litigation. They are also

5

related to the documents above, which are personnel and personal information related. They are closed pursuant to Section 610.021 (1), (3), and (13) and potentially (14), RSMo.

A privilege and closed records log immediately followed.

On October 14, 2020, the City filed a "Petition for Damages" alleging that the Department knowingly and purposefully violated the Missouri Sunshine Law by delaying responses and hiding records sought in the City's Sunshine Law requests, and knowingly and purposefully violated the Missouri Sunshine Law by withholding public records under inapplicable exceptions to the law. On April 26, 2021, the Fund Board filed a motion to intervene, which the circuit court granted over the City's objection.

On June 10, 2021, the City moved for summary judgment, arguing that the Walters Letter did not fall within any statutory exception to the general rule of disclosure of records held by public governmental bodies. On August 20, 2021, Respondents filed a joint motion for summary judgment. On September 15, 2021, the Department moved the court to review the Walters Letter and other withheld records *in camera*, indicating that review of the records would allow the court to determine if they fell within an exception to disclosure under Missouri's Sunshine Law. On September 16, 2021, the City moved the circuit court to review, *in camera*, a statement by David Walters that allegedly described Walters's intent in sending the Walters Letter to the Department. On September 28, 2021, the circuit court held a hearing on the parties' motions for summary judgment. The court ultimately reviewed, *in camera*, the Walters Letter and other records withheld by the Department, as well as the Walters statement.

6

On December 3, 2021, the circuit court entered Judgment finding there was no dispute as to the material facts and that the Department was entitled to judgment as a matter of law. The court granted Respondents' joint motion for summary judgment, and denied the City's motion for summary judgment. The court found that the Walters Letter "is by its nature an employment personnel record and relate[s] to personnel issues" and referenced "Sections 610.021.3 and 610.021.13 RSMo." The court found "that the e-mails that were closed by Defendant related to a closed document and/or contained privileged communications not subject to disclosure." Additionally, the court found that the Department did not commit a knowing or purposeful violation of the Missouri Sunshine Law. This appeal follows.

## Standard of Review

The standard of review for a preserved appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In such cases, we do not defer to the trial court's decision, but instead use the same criteria that the trial court should have employed in initially deciding whether to grant the motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal citations omitted). We review the record in the light most favorable to the party against whom judgment was entered, and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law.

7

*ITT Com. Fin. Corp.*, 854 S.W.2d at 376. A genuine issue that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 376. The moving party bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 378.

> A 'defending party' may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005).

### Points on Appeal

### Points I-III – Closed Record Under Section 610.021

In the City's first, second, and third points on appeal, the City contends that the circuit court erred in granting summary judgment in favor of Respondents, arguing that

the Walters Letter[4] is not a closed record under Section 610.021(3) or (13) because the Walters Letter does not contain personal information related to the hiring, firing, disciplining or promoting of an employee (Point I), does not relate to individually identifiable personnel records, performance ratings, or records of Eighmey (Point II), and does not infringe on Eighmey's privacy rights (Point III).

The Sunshine Law provides that, "[i]t is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.200 shall be liberally construed and their exceptions strictly construed to promote this public policy." § 610.011.1. Where "a specific statute requires disclosure of a specific type of public record, section 610.021 may not be relied on to maintain closure, although it would otherwise apply." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001). Further, "where more than one provision of chapter 610 applies to a record, the decision to open or close the record must be informed by the express public policy stated in section 610.011.1, which is that all records of public governmental bodies are presumed to be open records and that the exceptions in sections 610.010 to 610.028, including those in section 610.021, are to be strictly construed to promote that policy." *Id.* "[S]ection 610.011.1 should be used as a tiebreaker in favor of disclosure when

---

[4] The City only addresses the Walters Letter in its appeal, and has apparently abandoned its claim that the other records requested by the City and withheld by the Department were unjustifiably closed.

records fit equally well under two specific but opposite provisions of the Sunshine Law."

*Id.*

Here, there is no dispute that the Walters Letter is in the possession of a public governmental body. There is also no claim by the City that, other than the general open records provisions of Missouri's Sunshine Law, any other specific law, or provision within the Sunshine Law, requires disclosure of the Walters Letter. The City's claim is that the Walters Letter is a public record because it is being held by a public governmental body, and the Department had no discretion to close the Walters Letter under any Section 610.021 exception, including Section 610.021(3) or Section 610.021(13).

Section 610.021(3) of Missouri's Sunshine Law provides that, except to the extent that disclosure is otherwise required by law, a public governmental body is authorized to close records to the extent they "relate to" the "[h]iring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded." "Personal information" is defined within the provision as "information relating to the performance or merit of individual employees." *Id.*[5]

---

[5] Section 610.021(13) provides, in part, that, except to the extent that disclosure is otherwise required by law, a public governmental body is authorized to close records to the extent that they relate to "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment[.]"

The Department's Custodian of Records, Ronald Veltrop, attested to various aspects of the Walters Letter, and Veltrop's affidavit was included in the summary judgment record. As relevant here, Veltrop attested that, 1) he reviewed the Walters Letter in his position as Custodian of Records for the Department, 2) the letter discusses Walters's observations of the performance and merits of Eighmey as a state government employee, 3) Walters addressed the letter to Department Director Carol Comer, stating that the Department provides human resources services to Eighmey, and 4) the letter closes seeking changes to Eighmey's behavior as a state government employee.[6] An affidavit by Kelley J. Ogletree, Eighmey's successor and current executive director of the Fund, was also part of the summary judgment record. With regard to the Walters Letter, Ogletree's affidavit states that the letter "discusses Mr. Walters' observation of the performance and merits of Carol Eighmey as a state government employee," "alleges that Carol Eighmey created a hostile work environment," and "sought changes to Carol Eighmey's behavior as a state governmental employee." Upon review of the Walters Letter, we find these averments accurate.[7]

---

[6] In so requesting, Walters references Eighmey as "your employee."

[7] We note this only to indicate that Veltrop's and Ogletree's affidavits accurately reflect, generically, the contents of the Walters Letter such that it cannot be said that, in the summary judgment proceedings, Respondents misled the City or the court regarding the character of the letter. Our determination as to the true nature of the Walters Letter is based on our *in camera* review of the letter, not Veltrop's or Ogletree's averments, and it is clear from the circuit court's Judgment that its determination was as well.

Upon *in camera* review of the Walters Letter, we find that the Department was authorized to close the Walters Letter pursuant to Section 610.021(3) of Missouri's Sunshine Law. The Walters Letter discusses Eighmey's performance and merit as a state employee. The Walters Letter was sent to the Department director who serves, either personally or via a designee, on the Fund Board which hired, and could ultimately discipline and/or fire, Eighmey. The Walters Letter asks the Department director to intervene with regard to the behavior of the Department director's "employee," Eighmey. As such, the Walters Letter relates to the "hiring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded." § 610.021(3).

The City argues that if Eighmey was not disciplined as a result of the Walters Letter, then the Walters Letter cannot fit within Section 610.021(3)'s exception to disclosure. The City states that "the record is only closeable if it relates to an employment action taken against the employee," and it is not enough to say that "employment action *could* have been taken because of a record." Yet, the Walters Letter unequivocally discusses Eighmey's performance and merit in her position as executive director of the Fund. It also unequivocally asks the Department director to act in response to the letter. There are any number of situations in which a person's work performance and/or merits as an employee will be recorded in the context of hiring, firing, discipline, and promotion, but the fact that a person is not hired, fired, disciplined,

12

or promoted does not change the nature of the record, or mean that the record does not *relate to* hiring, firing, disciplining, or promoting.[8]

The City additionally argues that nearly any document could lead to an employment action such that Section 610.021(3)'s exception would then "swallow the rule." Yet, the legislature expressly provided Section 610.021(3) as an exception to the general rule of disclosure, and where a record fits within the exception, then a public governmental body is authorized to close the record unless another specific law or statute requires disclosure. *See Guyer,* 38 S.W.3d at 414. The Walters Letter fits within this exception, and there is no claim by the City that any other law, or a specific competing provision of the Sunshine Law, requires disclosure.

The City also argues that the Walters Letter is tantamount to an "incident report" under Section 610.100.1(4) and *Guyer v. City of Kirkwood*, and we should treat it as such.[9] We cannot.

*Guyer* involved a Sunshine Law request for records held by a police department involving an internal investigation of a police officer. 38 S.W.3d at 413. The City of

---

[8] In *Guyer v. City of Kirkwood*, a complaint and ensuing internal investigation which deemed the complaint unfounded were considered by the Missouri Supreme Court as records containing "information relating to the performance or merit of individual employees," as well as "personnel records," despite the complaint being unfounded such that no discipline would have occurred. 38 S.W.3d at 413-414. *Guyer* is explained further below.

[9] The City discusses *Guyer* in its second point on appeal, which we need not fully address given our disposition of the City's first point, but nevertheless discuss *Guyer* here because the Supreme Court also addressed Section 610.021(3) in *Guyer*.

13

Kirkwood received a citizen complaint alleging that Officer Steven Guyer had engaged in wrongdoing. *Id.* An investigation concluded that the complaint was unfounded, at which point Guyer requested a copy of the investigative report, as well as the identity of the complainant and the specifics of the complaint. *Id.* The City denied the request, citing Sections 610.021(3) and (13). *Id.*

The Missouri Supreme Court held that, if the records qualified as an incident report or an investigative report (of a closed investigation) under Section 610.100, the records were subject to disclosure under that provision, and Sections 610.021(3) and (13) could not be used to avoid disclosure. *Id.* at 415. "Incident report" within the Sunshine Law is defined as "a record of a law enforcement agency consisting of the date, time, specific location, name of the victim and immediate facts and circumstances surrounding the initial report of a crime or incident, including any logs of reported crimes, accidents and complaints maintained by that agency[.]" §610.100.1(4). "Investigative report" is defined as "a record, other than an arrest or incident report, prepared by personnel of a law enforcement agency, inquiring into a crime or suspected crime, either in response to an incident report or in response to evidence developed by law enforcement officers in the course of their duties." §610.100.1(5).

In analyzing the issues, the Court stated:

> At first glance, the records in this case appear to qualify both as incident and investigative reports under section 610.100, which are open records, and as 'personnel records,' or records containing 'information relating to the performance or merit of individual employees' under section 610.021, which are records that may be closed. However, the permissive

14

closure available in section 610.021 is qualified by its own terms, that is, records may not be closed under that section 'to the extent disclosure is otherwise required by law.' Where, as here, a specific statute requires disclosure of a specific type of public record, section 610.021 may not be relied on to maintain closure, although it would otherwise apply.

Furthermore, in cases like this, where more than one provision of chapter 610 applies to a record, the decision to open or close the record must be informed by the express public policy stated in section 610.011.1, which is that all records of public governmental bodies are presumed to be open records and that the exceptions in sections 610.010 to 610.028, including those in section 610.021, are to be strictly construed to promote that policy. In effect, section 610.011.1 should be used as a tiebreaker in favor of disclosure when records fit equally well under two specific but opposite provisions of the Sunshine Law.

*Id.* at 414.

Of note, the Court considered the complaint and investigative records to be records containing "information relating to the performance or merit of individual employees" and "personnel records" under Sections 610.021(3) and (13), respectively. *Id.* Disclosure of the original citizen's complaint was nevertheless required, because the record *also* qualified as an "incident report" under Section 610.100.1(4). *Id.* at 415. With regard to the investigation documents, the Court remanded the matter back to the circuit court because it was unclear if the citizen complaint implicated any criminal conduct so as to qualify as an "investigative report" under Section 610.100.1(5). *Id.* If so, disclosure was required; if not, the Court's remand suggested that disclosure would only then be

discretionary due to Section 610.021(3) and (13)'s exceptions to disclosure. *Id.* at 414.

The "incident report" exception in 610.100.1(4), however, cannot be applied to the Walters Letter. The incident and investigative report exceptions only apply to law enforcement agencies, and the Department was not acting as a law enforcement agency. To treat the Walters Letter as an "incident report," as advocated by the City, would impermissibly usurp clear legislative intent, and we are obligated to construe the plain language of statutes as enacted by the Missouri legislature, without adding statutory language where it does not exist. *Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. banc 2020).[10]

The City additionally argues that, it cannot be the policy of this State that an outside complaint of a public official's on-the-job conduct can be shielded as an employment record, because such would allow a school board to close a complaint by a student alleging a teacher had abused the student. Yet, as we know from *Guyer*, the records of different public governmental bodies may be governed by rules specific to the type of record that is being requested for public disclosure. Similar to law enforcement records, educational records of students are separately addressed in the Sunshine Law, requiring disclosure of such records to those undoubtedly most impacted by the contents

---

[10] The City also argues that the Walters Letter is "more analogous to a complaint about a police officer as it was sent by a third party." Nothing within *Guyer* focuses on the source of the records. The Court clearly stated that the records were "personnel records" or records containing "information related to the performance or merit of individual employees" under Section 610.021, but subject to disclosure if they also qualified as an incident or investigative report under Section 610.100.

16

– parents, guardians, custodians, and students. §610.021(6). Disclosure of such records to these same individuals is "otherwise required" by federal law pursuant to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g(a), thereby usurping any of the Sunshine Law's exceptions to disclosure pursuant to Section 610.021 itself.[11] Additionally, FERPA simultaneously protects *students* from the *public* exposure of records maintained by an educational agency that are directly related to the student, thereby harmonizing with Section 610.021(14) of the Sunshine Law which authorizes closure of "records which are protected from disclosure by law." 20 U.S.C. § 1232g(b). Moreover, there are a number of factors and laws that must be taken into consideration when determining whether a particular record may be publicly disclosed under the Sunshine Law, which precludes general applications of the law merely because one record, which might be disclosable under certain laws and contexts, appears facially similar to another record.

It is also significant that Walters was not merely a member of the general public who interacted with Eighmey, or observed her work performance, in that capacity.

---

[11] Under FERPA, "education records" are records, files, documents and other materials which "contain information directly related to a student" and are maintained by an educational agency or person acting for such agency. 20 U.S.C. § 1232g (a)(4)(A). A record directly relating to both a teacher and a student is disclosable to a parent/guardian/adult student because under 20 U.S.C. § 1232g (a)(4)(B)(iii), only records maintained by an educational institution that are "exclusively related" to an employee in that person's capacity as an employee, that are not available for use for any other purpose, are excluded from the definition of "education record."

17

Instead, Walters worked for Williams and Co., which contracted with the Fund Board to provide administrative services for the Fund. It is in *that* capacity, as an employee of a contractor providing administrative services to the Fund, that Walters observed the conduct which his letter describes. This is not simply an "outside complaint," as the City insinuates.

The circuit court did not err in granting summary judgment in favor of Respondents, as the Walters Letter is a closed record under Section 610.021(3). The City's first point on appeal is denied, and this denial obviates the need to determine if the Walters Letter is also a "personnel record" pursuant to Section 610.021(13) (Point II), or if public disclosure would infringe on Eighmey's privacy rights (Point III).

### Point IV – Genuine Issue of Material Fact

In the City's fourth point on appeal, the City contends that the circuit court erred in granting summary judgment to Respondents because a genuine issue of material fact remains disputed, arguing that the City offered a statement by the Walters Letter's author, David Walters, which contradicted Respondents' self-serving affidavits regarding the Walters Letter's content and ability to be closed.

First, we note that the undated, unsworn statement by David Walters that was provided for *in camera* review by the City was not part of the summary judgment record; it was not referenced or provided in response to any material fact set forth by Respondents, or used to support any material fact set forth by the City in its own motion for summary judgment. The court's gratuitous review of the statement did not add the

18

statement to the summary judgment record such that it could create a genuine dispute as to a material fact. *See Green v. Fotoohighiam*, 606 S.W.3d 113, 118 (Mo. banc 2020) ("[M]otions for summary judgment are decided only on those facts—along with properly cited pleadings, discovery, exhibits, or affidavits—referenced in Rule 74.04(c) paragraphs and responses, *not the entire trial court record*." (citation omitted)).

Second, despite the City's argument on appeal that Respondents' affidavits and Walter's statement now create a disputed issue of material fact as to the contents of the Walters Letter, the City asked the circuit court to "do its own review of the requested documents," arguing in "Plaintiffs Opposition to Summary Judgment Motion of Defendant and Intervenor" that "[t]he best evidence of the contents of the Walters Letter is the letter itself." The City cited *Laut v. City of Arnold*, 417 S.W.3d 315, 319-20 (Mo. App. 2013), which held a trial court to have had insufficient evidence to enter summary judgment in a Sunshine Law dispute where the trial court never reviewed the records at issue. Here, the Walters Letter was produced for *in camera* review, and relied upon by the court for its ultimate conclusion that the Walters Letter is exempt from disclosure under the Sunshine Law.

*In camera* review has long been deemed a proper means for the trial court to determine how Sunshine Law exemptions and disclosure requirements apply to the records at the heart of the dispute. *See City of Byrnes Mill v. Limesand*, 599 S.W.3d 466, 475 (Mo. App. 2020); *see also Laut v. City of Arnold*, 417 S.W.3d 315, 326 (Mo. App. 2013) ("[I]n camera review is a practical remedy that would resolve any factual dispute,

19

while at the same time maintaining confidentiality of documents that may be exempt from disclosure under the Sunshine Law.")  Although affidavits that are part of a summary judgment record may provide context, and might even harm a party in a knowing/purposeful violation accusation if an affidavit were to characterize a record in a manner wholly inconsistent with the contents, where the disputed records are before the court, a determination as to the character of the records in relation to the Sunshine Law is ultimately governed by the records themselves, and not affidavits by the parties which purport to describe the contents.

Third, even if David Walter's statement was included in the summary judgment record and its significance not superseded by the Walters Letter itself, its contents create no genuine issue of material fact.  The City advised the court in submitting David Walter's statement that the statement "describes [Walter's] intent" in sending the Walters Letter to the Department.  On appeal, the City argues that the Walters statement contradicts Respondents' "self-serving affidavits regarding the Letter's content and ability to be closed."  Upon review of the statement, we find no description of the Walters Letter's intent that cannot be gleaned from the Walters Letter itself, and no contradictions with the Department's affidavits.  The statement contains twenty numbered paragraphs, and only Paragraphs #7 and #8, taken together, appear to indicate why the Walters Letter was sent.  Yet, both Paragraphs #7 and #8, like the Walters Letter, relate to Eighmey's performance or merit as the executive director of the Fund.

20

The circuit court did not err in granting summary judgment to Respondents, as the statement by David Walters did not create a genuine issue of material fact in the summary judgment proceeding.

Point IV is denied.

## Point V-VII – Knowing and Purposeful Violations

In its fifth point on appeal, the City contends that the circuit court erred in denying summary judgment for the City,[12] arguing that Respondents knowingly violated Missouri's Sunshine Law when the Department asserted baseless exceptions of Section 610.021 that it knew were inapplicable to the Walters Letter. The City argues that, among other exceptions, the Department asserted that the Walters Letter was being closed pursuant to Section 610.021(1) (which allows closure of records that relate to legal actions or litigation, and confidential or privileged communications between a public governmental body or its representatives and its attorneys), and "potentially" Section 610.021(14) (which allows closure of records that are protected from disclosure by law).

---

[12] Generally, a trial court's overruling of a motion for summary judgment is not subject to appellate review. *Bob DeGeorge Associates, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 596 (Mo. banc 2012). However, when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party, such is reviewable. *Id.* at 597. Respondents do not contest the propriety of the City's claims which involve the circuit court's failure to grant summary judgment to the City. These particular claims address issues that the circuit court could have found in favor of the City, despite the court concluding that Sections 610.021(3) and (13) permit closure of the Walters Letter.

21

The City contends that the fact the Department supplied no evidence to support these exceptions, and later abandoned them, proves a knowing Sunshine Law violation.[13]

"Section 610.027 allows any aggrieved person to seek judicial enforcement of the Sunshine Law and provides the remedies of civil monetary penalties, costs and attorney's fees for knowing or purposeful violations of that law." *Laut v. City of Arnold*, 491 S.W.3d 191, 197 (Mo. banc 2016). Section 610.027 states, in relevant part:

> 3. Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has knowingly violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. If the court finds that there is a knowing violation of sections 610.010 to 610.026, the court may order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.
>
> 4. Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has purposely violated sections 610.010 to 610.026, the public

---

[13] The City does not argue that credibility determinations as to intent still need to be made such that the circuit court should not have ruled on the City's knowing/purposeful violation allegations; the City argues that the record proves knowing/purposeful violations and the court erred in failing to grant summary judgment to the City on these issues. We address the City's claims as presented on appeal. (*See Petruska v. City of Kinloch*, 559 S.W.3d 386 (Mo. App. 2018), wherein the Eastern District remanded a matter to a trial court after the trial court found in a summary judgment proceeding that a City violated the Sunshine Law but that the violation was not knowing or purposeful. The appellate court determined that, because the City's intent when violating the law required the trial court to make credibility determinations and draw inferences, it should not have been resolved at the summary judgment stage. *Id.* at 388.)

governmental body or the member shall be subject to a civil penalty in an amount up to five thousand dollars. If the court finds that there was a purposeful violation of sections 610.010 to 610.026, then the court shall order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing such a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.

 "[A] knowing violation requires proof that the public governmental body had actual knowledge that its conduct violated a statutory provision." *Laut*, 491 S.W.3d at 198. (internal quotation marks and citation omitted).  A purposeful violation occurs when the public governmental body acts with a "conscious design, intent, or plan to violate the law and did so with awareness of the probable consequences." *Id*.

As noted above, the City argues that a knowing Sunshine Law violation is proven by the record because the Department asserted, among other Sunshine Law exemptions, that the Walters Letter was being closed pursuant to Section 610.021(1) and (14), and the Department's abandonment of these exemptions proves the Department knew the exemptions were inapplicable.  Yet, the City ignores that its initial Sunshine Law request not only asked for disclosure of the Walters Letter, but also disclosure of any follow-up letters/correspondence related to the Walters Letter.  Exhibit E, provided by the City in its Motion for Summary Judgment, is the Department's September 28, 2020, response to the City's Sunshine Law requests.  Exhibit E is relied upon by the City to argue that the

23

Department offered baseless exceptions to disclosing the Walters Letter. Within Exhibit

E the Department states, in relevant part:

> Your July 16, 2020, request sought the production of a letter received by
> our Department from Williams & Company Consulting, Inc. employee
> David Walters, and any follow-up letters or correspondence related to this
> letter.
>
> Please find attached to the e-mail this letter came in the records responsive
> to your firm's request dated July 16, 2020. Other records found that were
> responsive to your requests have been closed pursuant to Section
> 610.021(1), (3), (13), and potentially (14), RSMo. They are personnel and
> personal information related and carry legal work product and privilege
> protections.
>
> We here provide a privilege and closed records log for your July 16, 2020,
> request.

Immediately thereafter, the Department sets forth the privilege and closed record log.

Within the log, the Department lists seventeen records responsive to the City's request, in

descending order by date. August 1, 2018, is the earliest entry, and the "Subject" line in

the first August 1, 2018, entry states: "Confidential – Letter from David Walters." The

"Closed Record Exception" for this entry states: "Section 610.021 (3) (13)." Neither

Section 610.021 (1) nor Section 610.021 (14) are noted as exceptions. The first August 1,

2018, entry is the only entry naming the Walters Letter. While some of the later entries

state the Closed Record Exception as "Section 610.021 (1) (3) (13)," the entry naming the

Walters Letter does not. No entries in the privilege and closed record log cite Section

610.021 (14) as an exception for any record set forth in the log.

24

Section 610.023.4 requires that, "[i]f request for access is denied, the custodian shall provide, upon request, a written statement of the grounds for such denial. Such statement shall cite the specific provision of law under which access is denied[.]" The City does not dispute that the privilege and closed record log satisfied this requirement. We find it apparent after considering Exhibit E in its entirety that the statement, "Other records found that were responsive to your requests have been closed pursuant to Section 610.021 (1), (3), (13), and potentially (14), RSMo," which immediately precedes the privilege and closed record log, is a general statement encompassing *all records* requested by the City. The privilege and closed record log, however, identifies the exemptions relied upon for each individual record being withheld. Section 610.021 (1) and (14) were not exemptions relied upon by the Department with regard to the Walters Letter.

The circuit court did not err in denying summary judgment to the City on the City's claim that Respondents knowingly violated Missouri's Sunshine Law when the Department asserted Section 610.021 (1) and (14) as exceptions to disclosure of the Walters Letter. The record does not unequivocally support that the Department cited Sections 610.021 (1) and (14) as exceptions to the Walters Letter. The City, therefore, did not demonstrate a right to judgment as a matter of law on this issue.

Point V is denied.[14]

In the City's sixth point on appeal, the City contends that the circuit court erred in denying summary judgment to the City, arguing that Respondents knowingly violated Missouri's Sunshine Law when Respondents withheld the Walters Letter in its entirety without producing a redacted version. The City first argues that, because Respondents used affidavits by Kelly Ogletree and Ronald Veltrop to support their motion for summary judgment, the statements made within those affidavits required the corresponding portions of the Walters Letter to be made public. We disagree.

Section 610.024 provides that, "[i]f a public record contains material which is not exempt from disclosure as well as material which is exempt from disclosure, the public governmental body shall separate the exempt from the nonexempt material and make the nonexempt material available for examination and copying." Under Section 610.021, a public governmental body is not *required* to close a record that fits within an exemption. At its discretion, the governmental body may disclose none, all, or any portion of a permissibly closable record. Here, we discussed above that the Department was authorized to close the Walters Letter under Section 610.021(3). Respondents' statements regarding the content of the Walters Letter made within affidavits during the summary

---

[14] The City's additional claim that the Department knowingly asserted baseless exceptions because it had previously produced the same type of letter in response to a 2018 Sunshine Law request is also without merit. The Section 610.021 exemptions from disclosure give public governmental bodies the discretion to close records, but do not mandate records closure.

judgment proceedings did not require Respondents to produce any portions of the Walters Letter.

The City additionally argues that the Department should have provided a redacted version of the Walters Letter because of Section 610.021(13)'s exception to the personnel records exemption, which states that "this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such." The City suggests that, if any public employees are mentioned within the Walters Letter, then at the very least that information should have been produced with the remainder redacted. We disagree. We interpret Section 610.021(13)'s exception to the exemption to regard a generic Sunshine Law request for names, positions, salaries, and lengths of service of officers and employees of public agencies. We do not believe that it requires production of the names, etc., of any and all employees that might be discussed within another employee's personnel record, or records that include information relating to the performance or merit of an employee that regards the hiring, firing, disciplining or promoting of an employee. The City's argument, taken to its logical end, would mean that a Sunshine Law request could be made for records of every employee of a public governmental body who, for example, had been disciplined by the employer. Under the City's argument, the governmental body would then have to produce the names of those individuals, which would then identify employees subjected to discipline, despite that information being protected under Section 610.021(3) and Section 610.021(13). Further, even if the statute could be

27

interpreted as the City desires, the City failed to produce in its summary judgment record any proof that the City's interpretation is founded in precedent such that the Department could be said to have actual knowledge that its conduct violated a statutory provision.

The circuit court did not err in denying summary judgment to the City on its claim that Respondents knowingly violated Missouri's Sunshine Law by withholding the Walters Letter in its entirety without producing a redacted version. The City failed to prove a right to judgment as a matter of law.

Point VI is denied.

In the City's seventh point on appeal, the City contends that the circuit court erred in denying summary judgment to the City on its claim that Respondents purposefully violated the Sunshine Law, arguing that Respondents had a conscious plan to deny access to the Walters Letter. The City argues that the plan was to first delay any response, then assert baseless exceptions.

With regard to alleged delayed responses, the City did not develop in the summary judgment record any proof that delays in production were not necessary and legitimate, or that the Department admitted to purposefully delaying production. With regard to the alleged baseless exceptions, as discussed above, the City failed to prove in the summary judgment record that Respondents asserted baseless exceptions to disclosure. The City, therefore, fails to prove a right to judgment as a matter of law on its claim that Respondents purposefully violated the Sunshine Law.

28

The circuit court did not err in denying summary judgment for the City on its claim that Respondents purposefully violated Missouri's Sunshine Law by having a conscious plan to deny access to the Walters Letter, as the City failed to prove a right to judgment as a matter of law on this issue.

Point VII is denied.

## Conclusion

We conclude that the circuit court 1) did not err in granting summary judgment to Respondents pursuant to Section 610.021(3), as the Walters Letter contains information relating to the performance or merit of Eighmey and the hiring, firing, disciplining, or promoting of an employee; 2) did not err in granting summary judgment to Respondents because the statement by David Walters did not create a genuine issue of material fact in the summary judgment proceeding; 3) did not err in denying summary judgment to the City on its claim that Respondents knowingly violated Missouri's Sunshine Law by knowingly asserting baseless exceptions with regard to the Walters Letter, as the City failed to demonstrate a right to judgment as a matter of law; 4) did not err in denying summary judgment to the City on its claim that Respondents knowingly violated Missouri's Sunshine Law by withholding the Walters Letter in its entirety without producing a redacted version, as the City failed to prove a right to judgment as a matter of law; 5) did not err in denying summary judgment to the City on its claim that Respondents purposefully violated Missouri's Sunshine Law by having a conscious plan

to deny access to the Walters Letter, as the City failed to prove a right to judgment as a matter of law.

The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.